## Case No. 4,254.

### The EASTERN STAR.

[1 Ware (185), 184.] [1]

District Court, D. Maine. Dec. Term, 1830.

G. Jewett, for libellants.
Fessenden & Deblois, for respondents.

WARE, District Judge. The only question presented in this case is, whether the seamen have lost their lien on the vessel as a security for their wages. The policy of the marine law has studiously connected the right of the seamen to wages, with the fortune of the vessel, and the vessel herself, on her return, with the freight which she has earned, constitute, says Emerigon, that fortune of the vessel which is to the crew the pledge of their wages. 2 Traité des Assurances, 263. It is their natural and best security, and that which they habitually look to; and though they have also their personal remedy against the owners and master, it is a case to which the rule justly applies, "Plus cautionis in re est quam in persona," (Dig. 50, 17, 25,) and which they ought not lightly to be presumed to have abandoned. The lien of a seaman is a privileged hypothecation, jus in re, and continues until it is destroyed in some of the modes of dissolving an hypothecary interest known to the law. These are, ordinarily, 1. By the destruction of the thing. 2. By the extinction of the principal obligation, that is by payment, or that which the law holds as equivalent to payment. 3. By a voluntary renunciation of his right by the hypothecary creditor. 4. By prescription or laches. Poth. Traité de l'Hypothèque, c. 3; Poth. Pand. liv. 20, tit. 6.

It was argued that the seamen had forfeited their rights by not enforcing them in season. There is no particular period fixed by the laws of this country which operates as a bar to this action, on the principle of a prescription. But it is not doubted that a seaman may lose his lien by lying by for a length of time, and suffering the vessel to be sold to a person ignorant of his claim, without giving him notice. But in the present case, though the vessel was sold after the contract was made, yet it was before the wages were earned, and it is the services and not the contract that create the lien. It was therefore created while the vessel was in the hands of the present owner; and she has been permitted by the libellants to make but a single voyage before they have proceeded to enforce their demand. This is not such a delay as will constitute a waiver of their lien.

If the lien is lost, then, it must be in consequence of the extinguishment of the debt by payment, or by that which the law regards as equivalent to payment. It is contended that the acceptance of the order on Houdlette, and the giving of time, without notice to the drawer or owners, operate as an extinguishment of the debt, at least so far as to discharge the lien, and by parity of reasoning, the master and owners, the acceptor having become insolvent after the acceptance. If this be admitted, it must

---

[1] [Reported by Hon. Ashur Ware, District Judge.]

result from the rigor of legal principles, and against the manifest intentions of the parties. The decision of Lord Stowell, in The Wm. Money's Case, 2 Hagg. Adm. 136, is referred to as a case in point. But the facts in that case were materially different from those in the present case. Money was discharged at Calcutta, and his wages were offered him in money at the time of his discharge, but wishing to remit a part of them to England, he preferred to take a bill of exchange on the owners, rather than receive the money in Bengal. The owners and drawer failed before the bill arrived at maturity, and he proceeded against the vessel. Lord Stowell said that, as he preferred to take the bill when the money was tendered to him, he must stand by the risk. Under the circumstances, the acceptance of the bill was held to be a discharge of the wages. In the present case, there was no offer of the money, but when the men called on the master for their pay, he drew an order on the owner. Even if he had made the draft payable to order, which he did not, I should have hesitated long before holding it to be a discharge of the wages, under the presumptions of the local law of the state, that a negotiable instrument is intended to be a discharge of a preëxisting debt. But as the drafts were not negotiable, they would not be held as payment, under the local law, between merchant and merchant. The reasonable construction of the drafts, and that which is conformable to the intention of the parties, is that they were mere memorandums, showing to the merchant the balance of wages due and unpaid, and their receiving them was not a waiver of any of their rights against the vessel or the master or owners.